OPINION
{¶ 1} Appellant, Tracy DeChurch, appeals from the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, which set a visitation schedule for appellee, Joyce Newsome, to see her two grandchildren. This court affirms the judgment of the trial court.
 {¶ 2} Appellee's son, Ryan Newsome, a.k.a. Kyle Newsome ("Kyle"), is the biological father of appellant's two minor children — a son born in 2001 and a daughter born in 2003. The following facts gave rise to this appeal. *Page 2 
 {¶ 3} Appellant had been best friends with appellee's daughter, Amy Jakowlew, since the seventh grade and spent time on many occasions with appellee's family. As a result, appellant was acquainted with appellee's son, Kyle, who is ten years younger than appellant.
 {¶ 4} In 2000, appellant began to date Kyle. At the time the two began dating, appellant was still married to her first husband, Paul Laurello, with whom she has two children.
 {¶ 5} The relationship between appellant and Kyle was tumultuous. In fact, appellant was aware of Kyle's drug use early in the relationship. When appellant became pregnant within four months after the birth of their first child, Kyle's drug use started to escalate. Although appellant attempted to help Kyle though drug treatment, he refused to participate. In addition, appellant attempted to speak with appellee regarding her son's drug problem and abusive behavior; however, appellee was in denial.
 {¶ 6} Appellant was the victim of domestic abuse on several occasions by Kyle, which eventually led to Kyle's conviction for domestic violence and the issuance of a civil protection order. In 2003, the relationship ended when appellant evicted Kyle from her home.
 {¶ 7} After several other incidents, a civil protection order was ordered on August 24, 2004, in the Ashtabula County Court of Common Pleas. This order prohibited Kyle from having any contact with appellant, each of their two children, and appellant's two children from her first marriage. This order has not been modified and remains in effect until August 19, 2009. *Page 3 
 {¶ 8} In 2005, Kyle was incarcerated after pleading guilty to two counts of possession of methamphetamine and one count of receiving stolen property. Kyle is scheduled to be released from prison in January 2010.
 {¶ 9} Appellee had regular contact with her grandchildren from the time they were born until May 2004, the time appellant ceased contact between appellee and the children. Until May 2004, appellee provided the majority of the daycare for the children, babysitting them three to four times per week.
 {¶ 10} In May 2004, appellant met Steven DeChurch ("Steven") and they later married in August 2004. Steven filed petitions for adoption of the minor children in the Ashtabula County Probate Court on July 15, 2005. However, because of Steven's previous conviction for possession of cocaine, the adoption process could not go forward. Consequently, appellant filed a voluntary dismissal of the petitions for adoption on December 1, 2005.
 {¶ 11} A series of hearings were held before the juvenile court magistrate from February 2006 through September 2006 on appellee's motion requesting grandparent visitation. After making findings of fact and applying the factors outlined in R.C. 3109.051(D), the magistrate recommended the following visitation schedule:
 {¶ 12} "1. Joyce Newsome [appellee] shall be granted supervised visitation at Rooms to Grow, biweekly, for 1 to 2 hours to be determined by the supervisor.
 {¶ 13} "2. Joyce Newsome [appellee] shall be responsible for any fees relating to the supervised visitation.
 {¶ 14} "3. No other paternal relatives shall be present during the visitation pending further court order. *Page 4 
 {¶ 15} "4. The matter be reviewed on May 14, 2007 at 2:00 p.m."
 {¶ 16} Appellant filed objections to the magistrate's decision. The trial court issued its final judgment on the matter overruling appellant's objections and adopting the magistrate's recommendation to allow visitation.
 {¶ 17} Thereafter, appellant filed a motion to stay visitation pending appeal in the trial court. The trial court denied appellant's motion to stay.
 {¶ 18} Appellant then moved this court to stay the execution of the appealed judgment during the pendency of the instant matter. This court, in its judgment entry dated May 3, 2007, stated that appellant made a prima facie demonstration of the need for a stay of the new visitation order. This court temporarily stayed this matter and ordered that appellee is to have no contact, supervised or otherwise, with the two minor children, until further order of this court.
 {¶ 19} On May 4, 2007, appellee filed a response to appellant's motion to stay in this court. This court issued a final determination on June 4, 2007. In that judgment entry, this court ordered the temporary stay, as set forth in the May 3, 2007 judgment entry, to remain in effect throughout the pendency of the instant appeal.
 {¶ 20} In her sole assignment of error, appellant asserts:
 {¶ 21} "Whether the trial court erred in granting appellee's request for visitation since appellee failed to meet her burden of proof that any such visitation is in the children's best interests."
 {¶ 22} For visitation and domestic relations cases, the standard of review this court must employ is abuse of discretion. Booth v.Booth (1989), 44 Ohio St.3d 142, 144. "The term "abuse of discretion" connotes more than an error of law or judgment; it *Page 5 
implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Citations omitted.) Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. This court must be mindful of the fact that when applying the abuse of discretion standard, we "may not substitute [our] judgment for that of the trial court." Women's Care, Inc. v.Belcher, 5th Dist. No. 2004-CA-0047, 2005-Ohio-543, at ¶ 29, citingS. Ohio Coal Co. v. Kidney (1995), 100 Ohio App.3d 661, 667.
 {¶ 23} R.C. 3109.12 sets forth "parenting time, companionship or visitation rights where mother is unmarried." The statute specifically provides, in pertinent part:
 {¶ 24} "(A) If a child is born to an unmarried woman and if the father of the child has acknowledged the child and that acknowledgment has become final pursuant to section 2151.232, 3111.25, or 3111.821 of the Revised Code or has been determined in an action under Chapter 3111 of the Revised Code to be the father of the child, * * * the parents of the father and any relative of the father may file a complaint requesting that the court grant them reasonable companionship or visitation rights with the child.
 {¶ 25} "(B) The court may grant the parenting time rights or companionship or visitation rights requested under division (A) of this section, if it determines that the granting of the parenting time rights or companionship or visitation rights is in the best interest of the child. In determining whether to grant reasonable parenting time rights or reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code. Divisions (C), (K), and (L) of section 3109.051 of the Revised Code apply to the determination of reasonable parenting time *Page 6 
rights or reasonable companionship or visitation rights under this section and to any order granting any such rights that is issued under this section."
 {¶ 26} R.C. 3109.051(D) outlines 16 factors a magistrate or trial court must take into consideration when determining "companionship or visitation rights to a grandparent, relative, or other person" pursuant to R.C. 3109.12. The R.C. 3109.051(D) factors include:
 {¶ 27} "(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
 {¶ 28} "(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;
 {¶ 29} "(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
 {¶ 30} "(4) The age of the child;
 {¶ 31} "(5) The child's adjustment to home, school, and community;
 {¶ 32} "(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to *Page 7 
a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;
 {¶ 33} "(7) The health and safety of the child;
 {¶ 34} "(8) The amount of time that will be available for the child to spend with siblings;
 {¶ 35} "(9) The mental and physical health of all parties;
 {¶ 36} "(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;
 {¶ 37} "(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 38} "(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be *Page 8 
the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 39} "(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 40} "(14) Whether either parent has established a residence or is planning to establish a residence outside this state;
 {¶ 41} "(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;
 {¶ 42} "(16) Any other factor in the best interest of the child."
 {¶ 43} In examining the factors as outlined in R.C. 3109.051(D), the Supreme Court of Ohio, in Harrold v. Collier, 107 Ohio St.3d 44,2005-Ohio-5334, at ¶ 12, stated "Ohio courts are obligated to afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation made pursuant to *Page 9 
R.C. 3109.11 or 3109.12." Further, the Harrold Court noted that in addition to weighing the wishes of the parents, R.C. 3109.051(D) includes an additional 15 factors that the trial court is obligated to consider when resolving a child's best interest in a visitation matter. Id. at ¶ 43. "Ohio's nonparental visitation statutes not only allow the trial court to afford parental decisions the requisite special weight, but they also allow the court to take into * * * consideration the best interest of the child and balance that interest against the parent's desires." Id.
 {¶ 44} First, appellant argues "the magistrate failed to sufficiently review the relevant factors under R.C. 3109.051 and R.C. 3109.12 with the testimony and evidence presented at hearing." We disagree.
 {¶ 45} The decision of the magistrate was rendered after an extensive evidentiary hearing. In its decision, the magistrate issued a nine-page opinion consisting of over three pages of findings of fact and outlining all 16 factors presented in R.C. 3109.051(D).
 {¶ 46} In delivering the decision, the magistrate mentioned the significant relationship between appellee and the minor children before visitation was ceased by appellant. Further, the magistrate noted appellant's wish that appellee not have visitation with the children and also recognized appellant's concern for her children's welfare when in the care of appellee. The magistrate also considered "any other factors in the best interest of the children" and stated:
 {¶ 47} "With the failed adoption, these children will eventually have some contact with their father and his family. Almost three years have gone by since the children had *Page 10 
any kind of contact with the paternal relatives. The more time that passes, the more traumatized and the bigger transition these children will have when contact is allowed."
 {¶ 48} The decision of the magistrate demonstrates that she considered all relevant factors in light of the facts of the instant case. There was sufficient evidence to support the magistrate's decision granting grandparent visitation to appellee.
 {¶ 49} Appellant also contends the "magistrate incorrectly determined that appellant had failed to provide reasons appellee should not have visitation with the children when appellant explained in great detail during her testimony her basis for objecting to such visitation." In her brief, appellant argues that she testified in great detail as to why she did not desire appellee to have visitation with her children. Appellant cites to numerous incidents including appellee's decision to leave appellant's children with appellee's ex-husband, appellee's emotional instability evidenced by an occurrence in May 2003, and several incidents relating to Kyle's drug problem.
 {¶ 50} With the exception of the alleged occurrence in May 2003, the magistrate's decision incorporates all of the events cited to by appellant in her brief. In issuing the findings of fact, the magistrate referred to appellee's decision to leave appellant's children with her ex-husband. In the decision, the magistrate weighed the significance of this event when applying the factors in R.C. 3109.051(D) and stated:
 {¶ 51} "Ms. DeChurch [appellant] did testify that she was concerned for her children's welfare when in the care of Ms. Newsome [appellee] on one occasion when Ms. Newsome [appellee] allowed the paternal grandfather to have contact with the children. Ms. DeChurch [appellant] does not believe that she can trust Ms. Newsome [appellee] to care for her children." *Page 11 
 {¶ 52} The magistrate's decision also found that appellee is an enabler and when appellant attempted to contact appellee regarding Kyle's drug problem, appellee denied the existence of a problem.
 {¶ 53} The magistrate's decision, however, did not refer to the alleged incident occurring in May 2003. We note that matters of credibility "are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. In addition, "as the trier of fact, the magistrate [i]s `best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" Modie v. Andrews (July 26, 2000), 9th Dist. No. 19543, 2000 Ohio App. LEXIS 3333, at *15. (Citation omitted.) We decline to overturn the judgment of the trial court because the magistrate did not include this alleged incident in her decision, since she was in the best position to determine whether it actually occurred. This argument is, therefore, without merit.
 {¶ 54} Third, appellant argues "the magistrate failed to recognize that Father and appellee, through their common legal counsel, sought Juvenile Court to permit appellee to take the children to visit father in prison, in direct violation of the Civil Protection Order issued by the Ashtabula County Common Pleas Court, and that such request and attempted action was not in the best interest of the children."
 {¶ 55} In order to support her argument, appellant attached to her brief Exhibit A, a motion to modify visitation and child support, which allegedly had been filed by appellee's counsel on behalf of Kyle. However, after a review of the record, this motion is not included in the record of the trial court's proceedings and, therefore, we cannot consider it on appeal. Loc. R. 16(B)(1) of the Eleventh District Court of Appeals. *Page 12 
 {¶ 56} Nonetheless, at the evidentiary hearing, the magistrate recognized that if the children visited Kyle at the correctional facility it would be in violation of the civil protection order. At the evidentiary hearing, the magistrate stated, "[i]t's [sic] just seems to me we're prolonging the evidentiary [sic] though on something that can't happen unless a court says it can happen and not this court. The CPO court." Accordingly, this argument is without merit.
 {¶ 57} In view of the foregoing and after a thorough review of the record, we find that the trial court did not abuse its discretion in adopting the decision of the magistrate, and the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed. The temporary stay issued by this court in its June 4, 2007 judgment entry is hereby dissolved.
 DIANE V. GRENDELL, P.J., MARY JANE TRAPP, J., concur. *Page 1