[Cite as *Lingar v. Landel*, 2020-Ohio-136.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

| | |
|---|---|
| Tony J. Lingar, deceased | Court of Appeals No. WM-19-011 |
| Plaintiff | Trial Court No. 20154018 |
| v. | |
| Jodi R. Landel | |
| Appellee | |
| v. | |
| Charlette Lingar and Luther J. Lingar | **DECISION AND JUDGMENT** |
| Appellants | Decided: January 17, 2020 |

* * * * *

Katherine J. Rakes, for appellee.

John Bryan Nugen, for appellants.

* * * * *

**SINGER, J.**

{¶ 1} Appellants Charlette and Luther Lingar appeal the June 25, 2019 judgment

of the Williams County Court of Common Pleas, Juvenile Division, granting them

limited visitation with their granddaughter, appellee Jodi Landel's daughter. Because the trial court did not abuse its discretion in granting and limiting visitation time to appellants two days a month, we affirm.

{¶ 2} Appellants bring forth one assignment of error for our review:

[The] trial court abused the court's discretion in providing "great weight" to the wishes of mother in lieu of that which is in the best interest of the grandchild.

{¶ 3} Appellants' son, Tony Lingar, engaged in a romantic relationship with appellee. Appellee became pregnant with S.L. who was born in June 2014. After determining that Tony was S.L.'s father in an action before the trial court, appellee and Tony entered into a shared parenting plan. In January 2018, appellee filed a motion to terminate this shared parenting plan.

{¶ 4} The initial parenting plan gave Tony limited parenting time, but his parenting time was slowly increased. When S.L. was around nine months old, Tony was granted 50 percent parenting time. Because Tony lived with appellants during this time, appellants served as S.L.'s primary caregivers while she stayed at their house. Appellee confirmed appellants' involvement with raising S.L. and testified that they served as primary caregivers for S.L. when she was in their home.

{¶ 5} On February 7, 2018, Tony passed away after falling and striking his head on a table. The parties disputed whether illegal drugs were involved in Tony's death. Appellee did not initially permit her daughter to go to appellants' home as she dealt with

2.

Tony's death and prepared her daughter for the major shift in her life. Thirteen days later, appellants filed a motion to intervene in the underlying juvenile case in order to establish a visitation schedule between appellants and S.L. Appellants represented that they believed had they not filed the motion to intervene, they would not have seen S.L. again.

{¶ 6} In October 2018, the trial court issued a temporary visitation order which permitted appellants to speak to S.L. at 4:00 p.m. for at least 15 minutes every Wednesday and to have visitation every other Sunday from 11:00 a.m. to 4:00 p.m. From Tony's death until the court order in October 2018, appellants had little contact with their granddaughter whom they helped raise. Appellants filed several motions during the course of the proceedings below.

{¶ 7} The parties attempted to mediate their differences. The parties reached a tentative agreement which permitted appellants to have visitation one entire weekend and one Sunday per month. Despite reaching the agreement, appellee did not sign the agreement and the parties reverted to the October court order. The trial court then held a full evidentiary hearing on the motion to intervene where all parties testified.

{¶ 8} Appellants and appellee both described their relationship as contentious and strained. Both parties made allegations that the other party spoke poorly of them in the presence of S.L. and utilized social media to disparage one another. Appellee testified that appellants are difficult to work with and at times have yelled at her over the

3.

telephone. Appellee stated that although S.L. had a good relationship with appellants, appellee's strained relationship with appellants made it difficult for her to parent.

{¶ 9} Another source of contention between the parties was the court-ordered phone calls on Wednesday afternoons. Appellee testified that the phone calls were disruptive to their routine because S.L. returns home from school at 3:30 p.m. and appellee has barely enough time to get S.L. a snack and situated after school. Appellee also testified that sometimes S.L. does not want to speak to appellants and has a hard time focusing on the phone call due to her young age. Appellee testified that the phone calls are difficult because appellants require the phone calls to take place right at 4:00 p.m. and at times have yelled at appellee after the phone calls. Appellants testified that at times the background noise of the phone calls was too loud and made it difficult to speak with S.L. Charlette Lingar also testified that at times the phone calls were ended after exactly 15 minutes by appellee.

{¶ 10} At one of the hearings on the motion to intervene, call and text records from appellee were entered into evidence. These records demonstrate that Charlette Lingar began calling exactly at 4:00 p.m. She did not stop calling until appellee answered and began texting when her phone calls were not answered. One of these text messages was sent at 4:01 p.m., one minute after the phone call was scheduled to begin.

{¶ 11} Appellants have also called the police and child protective services on appellee on at least two occasions. One of the times that police were involved in the matter was on a Sunday in the wintertime when S.L. was scheduled to go to appellants'

4.

house for visitation. Appellee texted appellants that because the county they resided in was under a level two snow emergency, S.L. would not be attending visitation that day. Appellee then attempted to figure out a way to make up for the lost time including additional hours on already scheduled Sunday visitations. Appellants did not relent and arrived at the police station where S.L. was scheduled to be exchanged. When appellee did not arrive, appellants enlisted the help of officers to ensure the visitation would occur as scheduled and appellants and officers arrived at appellee's house. However, the police officers agreed that based on the snow emergency level, appellee was not supposed to be on the road unless it was an emergency and did not permit the visitation to take place that day.

{¶ 12} Another call from appellants was to complete a well-being check on S.L. after appellants saw photos on social media of S.L. drinking out of a beer bottle.

{¶ 13} Appellee discussed several concerns she had with S.L. staying with appellants. One such concern involved S.L. being exposed to second- and third-hand smoke. Tony and appellants are smokers. Appellants testified that they do not smoke in their house or the vehicle they use to transport S.L. Luther Lingar smokes in the barn where, at times, S.L. will play with her toys. Appellee testified that she was worried about their smoking habits because S.L. has been diagnosed with asthma and is on medications to take care of the symptoms. Appellee testified that she has not seen a direct correlation between visits with appellants and an increase in asthma symptoms, but

5.

the symptoms had been increasing in intensity lately. Appellee scheduled further doctor visits to determine the scope and cause of the asthma symptoms.

{¶ 14} Appellee was also concerned about weapons appellants had in their home. Charlette Lingar had a concealed carry license and owned weapons. Appellee testified she had not seen appellants carry a weapon since the original visitation order was put into place.

{¶ 15} In order to alleviate some of appellee's concerns, appellants agreed to lock up any weapons they may have during visitations with S.L., that they would abstain from drinking while she was in their care, and that they would not smoke in her presence while she was visiting them.

{¶ 16} In their motion to intervene, appellants asked that they be the first to be asked to babysit S.L. if she needed a babysitter, that the parties continue not to speak about one another on social media, that both parties agree not to defame the other in front of the child, and to be informed of school events so that they may attend. They also asked that the weekly phone calls continue.

{¶ 17} Appellee sought to limit visitation to one Sunday a month until further information about the asthma is obtained. She wanted to ensure that newly aggravated symptoms are not aggravated by visiting the home of appellants because S.L.'s symptoms are aggravated by smoke. Once appellee could be confident that the visitations are not increasing the asthma symptoms, she believed that an additional visitation once a month

6.

with an overnight stay would be appropriate.  She also believed that the phone calls were not in the child's best interest.

{¶ 18} The trial court found in favor of appellee and ordered visitations for several hours every other Sunday.  The court gave "great weight to the views and wishes" of appellee, but found that "the wishes of [appellee] cannot be given greater weight that a finding is in a minor child's best interest."  The court then found that it was in the child's best interest to have visitation with appellants on a limited basis.  The court based this decision on appellee's right to make decisions regarding her daughter's health and safety.  The court found "[a] grandparent's statutory right to visit does not override the parent's fundamental right and duty to make parenting decisions which are in the child's best interest."  The trial court stated that the phone calls were only increasing the tensions between the parties and therefore ordered that they stop unless the child requested them.  The court further ordered that there be no alcohol consumption or smoking while caring for S.L. and that all weapons be secured while she visits.  The trial court then stated that if the visitation schedule was adhered to and remained civil and amicable, then appellants will be granted one overnight stay per month.

**Law**

Grandparents have no constitutional right to association with their grandchildren.  The establishment of a home and the rearing of children is a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution.  Parental autonomy entitles the parents the sole

7.

duty and right to the custody, care and nurture of their child. Grandparents also have no common law rights of access to their grandchildren. However, the state has an interest to protect the welfare of children and may infringe upon the parental autonomy liberty interest if the law is limited to serve a compelling state interest. (Citations omitted). *In re K.M.-B.*, 2015-Ohio-4626, 48 N.E.3d 998, ¶ 19 (6th Dist.).

{¶ 19} A relationship between grandparents and grandchildren is generally viewed as a relationship that is beneficial to the welfare of a child and, therefore, is a relationship which must be statutorily protected if the bond is already formed or some event has prevented the formation of the bond. *Id.*, citing *Troxel v. Granville*, 530 U.S. 57, 65-69, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

{¶ 20} "These statutes allow a relative visitation in these limited situations because the precipitating, disruptive event might give rise to a situation where a parent would deprive an estranged relative of a continued relationship with the child." *Id.* at ¶ 21, citing *In re Gibson*, 61 Ohio St.3d 168, 169, 573 N.E.2d 1074 (1991).

The justification for a reasonable relative visitation rights is based on several lines of thought. One purpose is to preserve family connections where the father of the child is not present and the natural tension between in-laws could lead to the paternal family being cut off from the child. Another purpose served by the statute is the protection of a maternal or paternal relative's relationship with a child of an unmarried couple which

developed, because of the lack of a marriage, and the need for a relative to undertake parental-like duties assist the mother. Furthermore, with respect to grandparent visitation, there is a desire to protect the unique nature of the grandparent/grandchild relationship. (Citations omitted). *Id.* at ¶ 32.

{¶ 21} R.C. 3109.11 permits grandparents to be granted reasonable visitation with a minor child if a court, after considering the factors laid out in R.C. 3109.051(D), finds it is in the best interest of the child to permit the visitation. When determining whether to grant visitation to a grandparent, a court must consider several factors including the relationships between the child, the parent, and the grandparent, the geographical location of the residences of interested parties, and the age of the child. R.C. 3109.051(D). The court shall also consider the child's and parent's available time which includes the parent's employment schedule, the child's school schedule, and the child's and parent's holiday and vacation schedule. *Id.* The court is also to consider the child's adjustment to their home, school, and community, the health and safety of the child, and the mental and physical health of all the parties. *Id.* A further factor is the consideration of the parties' willingness to reschedule missed visitation time and to facilitate the visitation time. *Id.* Finally, the trial court should consider whether the parent has "continuously and willfully denied" visitation time, the wishes and concerns of the child's parents, and any other factor in the best interest of the child. *Id.*

{¶ 22} "A presumption exists that fit parents determine the best interests of their children. Therefore, absent allegations of unfitness, the court must give special weight to

9.

the wishes of the parent. The burden of proving the best interest of the child warrants nonparent visitation rests with the nonparent." (Citations omitted). *In re K.M.-B.* at ¶ 43.

{¶ 23} We review a juvenile court's decision regarding visitation rights for an abuse of discretion. *Id.* at ¶ 45, citing *In re Newsome*, 11th Dist. Ashtabula No. 2007-A-0030, 2008-Ohio-2132, ¶ 22. "An abuse of discretion requires more than an error in judgment; the trial court's decision must be found to be unreasonable, arbitrary, or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

## Analysis

{¶ 24} Appellants argue that the trial court abused its discretion when it severely reduced their visitation time. Appellants point to the amount of time they used to have with S.L. as compared to the amount the court order granted them visitation in order to demonstrate this abuse of discretion. Appellants also argue that the court granted excessive deference to appellee's wishes because the trial court stated it gave "great weight" to appellee's wishes as S.L.'s mother.

{¶ 25} Appellee argues that the trial court properly considered the factors in R.C. 3901.051 and made a decision that was not unreasonable, arbitrary, or unconscionable. Appellee argues that the trial court's usage of the words "great weight" does not equate to the entire decision being an abuse of discretion. Finally, appellee argues that it is not in S.L.'s best interest to return to having weekly phone calls or to have more than one visit a month.

10.

{¶ 26} We do not find that the trial court abused its discretion when granting visitation to appellants in this case. The trial court correctly considered all of the applicable factors. The trial court considered the relationships between S.L., appellee, and appellants. The court noted the contentious relationship between appellee and appellants, but also how much S.L. cares for her grandparents. The court also considered the 45-minute distance between the two parties and the young age of S.L. when determining what was in her best interest. The trial court noted and was presented evidence of appellee's willingness to reschedule a missed visitation time and that appellee did not willfully and continuously deny appellants' visitation.

{¶ 27} The trial court gave due deference to appellee as S.L.'s mother surrounding the health and safety of S.L. and her asthma symptoms. The trial court used the words "great weight" when considering appellee's wishes. However, the trial court did not give the wishes of appellee unfair weight or allow the wishes of appellee to override the other factors that trial court was required to consider. Thus, the trial court complied with its requirements of balancing all of the appropriate factors when determining what was in S.L.'s best interest.

{¶ 28} Appellants do not challenge any of the findings of fact by the trial court, but rely primarily on the trial court's usage of "great weight." The trial court was required to give "special weight." We do not find that the trial court erred in this particular instance because although the trial court stated it gave great weight to appellee's wishes, it acknowledged in the next sentence that appellee's wishes could not

11.

override what was in S.L.'s best interest, or the other factors the court was required to consider when making a decision regarding appellants' visitation.

{¶ 29} The trial court's decision to grant the visitation in a limited manner was not unreasonable, arbitrary, or capricious. The decision was not unreasonable considering the history of the relationship between appellee and appellants, S.L.'s young age, and the distance between the parties. The court also properly fashioned the visitation schedule in order to ensure that S.L.'s asthma was not going to be aggravated by visiting appellants home. The trial court concluded its order granting visitation that the court would consider increasing the visitation time in six months if the visitation order was followed, the parties remain amicable, and more information regarding S.L.'s asthma demonstrates that visiting their home does not aggravate her symptoms.

{¶ 30} Although appellants are in a difficult position because they have been reduced from assisting in raising S.L. half of the week to only seeing her two days a month, we cannot find that the trial court did not act in S.L.'s best interest when the trial court reduced this visitation time. S.L. clearly has a connection with appellants and appellants clearly love and care for S.L. Thus, even if the visitation is limited, the court cannot find that the trial court abused its discretion when it determined some level of visitation was in S.L.'s best interest.

12.

{¶ 31} Therefore, appellants' sole assignment of error is found not well-taken. The judgment of the Williams County Court of Common Pleas, Juvenile Division, is hereby affirmed. Pursuant to App.R. 24, appellants are to pay the costs of this action.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

Christine E. Mayle, J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.