[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] At the hearing, Ms. Swain testified that her middle initial is "A" for Ann and indicated that the middle initial "L" used in the complaint is incorrect. We continue, however, to use the name as it appears on the complaint.
 DECISION AND JUDGMENT ENTRY
{¶ 1} Cheryl L. Swain appeals the trial court's decision adopting Rick Swain's shared parenting plan in this divorce action. She contends that the trial court erred by adopting Mr. Swain's findings of fact and conclusions of law since the evidence in the record does not support them. Because the findings of fact accurately reflect the evidence contained in the record and because those findings support the conclusions of law, we reject Ms. Swain's argument. She also argues that the record does not support the trial court's finding that shared parenting would serve the children's best interests. The record shows that the trial court considered all of the relevant best interest factors and made findings regarding them. The evidence presented at the hearing supports the court's findings. Therefore, Ms. Swain's argument is meritless, and we affirm the court's judgment.
 {¶ 2} The parties married in 1992 and subsequently had two children: Trey M. Swain, born in 1996, and Colby E. Swain, born in 2001. In 2003, Mr. Swain filed for divorce.
 {¶ 3} Initially, the parties agreed to a temporary parenting arrangement that provided Ms. Swain had custody of the children four nights per week and Mr. Swain had the children three nights.
 {¶ 4} Subsequently, Mr. Swain filed a shared parenting plan that essentially followed the parties' temporary arrangement, except that it provided he would have custody of the children for four nights every other week.
 {¶ 5} At the November 13, 2003 hearing, the sole issue was how to allocate parental rights and responsibilities. Mr. Swain proposed shared parenting, while Ms. Swain objected to his plan. Mr. Swain testified that the children had adapted to the temporary arrangement and that he had not noticed any adverse effects resulting from the parenting arrangement.
 {¶ 6} Ms. Swain stated that the parenting arrangement has negatively affected the children, most obviously, the younger child. She explained:
Uh, he had a very difficult time uh, weaning from the bottle. I believe he was 1 and ½ before we actually weaned him from the bottle. Uh, his sleeping arrangements haven't been very good. He doesn't * * * he doesn't sleep through the night very often. He wakes up crying and yelling for Mom or sometimes Dad. Uh, he constantly needs to know where I am. Uh, I have to bring him with me in the bathrooms and different things like that. Uh, my oldest child uh, has had some nightmares, but those have pretty much stopped. Uh, my biggest problem with him is uh, discipline. He * * * he needs structure. And he's very hard to handle immediately after custody changes. He doesn't want to brush his teeth. He won't * * * the routines — laying out his clothes and all those things are battles. Uh, he uh, * * * there's just no routine. Even sitting down at the table to eat dinner is difficult. Uh, he doesn't want to sit. He doesn't want to eat anything that's fixed. Uh, it takes a good 48-hours before the routine gets back in to where he's getting ready for school and getting his stuff ready the night before and he eats dinner and those kind[s] of things. It's about 48-hours before things start running smoothly again. And at that point, you know, we start back over it during the next visitation. We have to start back.
 {¶ 7} She stated that when she and Mr. Swain still lived together, the older boy "used to always lay out his clothes. He used to get his stuff done the night before for school. Uh, they both ate better. Uh, they would eat meals as opposed to just a snack — wanting to snack all the time." She would prefer to have a more structured parenting arrangement, which would allow the children to have a routine. She wanted to have them on school nights so that they could sleep in the same bed and follow the same evening routine.
 {¶ 8} Mr. Swain disputed Ms. Swain's account, stating that the younger child is fine when visiting with him and that he has not noticed any sleeping problems. He further testified that he has not noticed the older child having problems brushing his teeth or preparing for school.
 {¶ 9} The court subsequently entered a divorce decree and determined that shared parenting would serve the children's best interest. The court adopted Mr. Swain's proposed shared parenting plan.
 {¶ 10} Ms. Swain appealed and we reversed and remanded the trial court's judgment so that it could enter more complete findings of fact and conclusions of law under R.C.3109.04(D)(1)(a)(iii). See Swain v. Swain, Pike App. No. 04CA726, 2005-Ohio-65.
 {¶ 11} On remand, the trial court adopted Mr. Swain's findings of fact and conclusions of law. The court noted that it interviewed the parties' oldest child, Trey, and found that his "wishes and concerns, as expressed to the Court, favor and support the adoption of the shared parenting plan filed by [Mr. Swain]." The court additionally found that: (1) the children "interact very well and have a close relationship with each other;" (2) both parents interact well with the children; (3) both parents provide a structured environment for the children; (4) both parents have good relationships with the children; (5) "[t]here was no evidence of any adverse physical or mental health conditions with respect to either of the parents or either of the children;" (6) "the shared parenting plan filed by [Mr. Swain] is substantially the same plan as set forth in the Agreed Temporary Custody Order and the modification thereof; (7) the parties have successfully cooperated and made decisions jointly with respect to their children entering into and following the Agreed Temporary Custody Order and its modification; (8) the parents have the ability to cooperate and make decisions jointly with respect to their children; (9) "both parents have demonstrated and testified that they have the ability to encourage the contact of both children with the other parent;" (10) "the parents live in geographic proximity to each other, approximately 10 minutes apart. This proximity, the fact that [Mr. Swain]'s residence is on the way of one of two routes to the school that Trey attends and where [Ms. Swain] works, and the fact that Colby's babysitter is located in a convenient location for both parents, relate to and have a positive impact on the practical considerations of shared parenting;" (11) "the shared parenting plan filed by [Mr. Swain] is substantially the same as the temporary plan that was in effect for almost a year, with good results;" (12) "for the eleven months preceding their divorce, the parties successfully shared in the parenting of their children;" (13) Ms. Swain "is not the primary caregiver of Colby;" (14) "[Ms. Swain] produced no evidence that [she] alone should have sole custody of the minor children, the alternate option to the Court granting [Mr. Swain]'s shared parenting plan. [Ms. Swain]'s testimony alleging some difficulties she encountered with the children did not tie such behavior to the shared parenting arrangement in effect, was refuted by testimony of plaintiff, and was not credible to this Court." The Court determined that the shared parenting plan would serve the children's best interests.
 {¶ 12} Ms. Swain appealed the trial court's judgment and raises the following assignments of error:
First Assignment of Error:
The Findings of Fact and Conclusions of Law adopted by the Trial Court per Decision and Judgment Entry time-stamped February 4, 2005 are inconsistent with and/or not supported by the evidence which was presented.
Second Assignment of Error:
Further, the Trial Court erred by issuing a shared parenting order due to the fact that shared parenting is not in the best interest of the parties' minor children and thus contrary to Ohio Revised Code 3109.04(B)(1) and (D)(1).
 I {¶ 13} Ms. Swain first asserts that the trial court erred by adopting appellee's findings of fact and conclusions of law when they are not consistent with or supported by the evidence. She argues there is no evidence concerning the following findings: (1) each parent encourages companionship for the children with the other parent; (2) Trey's wishes favor adopting the shared parenting plan; (3) both parents have shown that they are likely to honor and facilitate court-approved parenting time rights; (4) both parents observed the agreed temporary custody order and neither has continuously or willfully denied the other parent's right to parenting time; (5) both parents have jobs in the area and there is no evidence that either parent plans to establish an out-of-state residence; (6) Mr. Swain's shared parenting plan is substantially the same as the one set forth in the agreed temporary custody order; (7) the parties have successfully cooperated and made joint decisions; (8) the parents have the ability to cooperate and make decisions jointly with respect to the children; (9) Mr. Swain encouraged the children to talk about their mother and he has ability to encourage the sharing of love and affection between both children and Ms. Swain; (10) both parents have demonstrated and testified that they have the ability to encourage the contact of both children with the other parent; (11) for the eleven months before the divorce, the parties successfully shared parenting; and (12) Colby was almost 16 months old when the first agreed shared parenting order went into place and was 27 months old when the court first adopted the shared parenting plan, and thus he spent almost one-half of his life in both parents' care.
 {¶ 14} She then argues the evidence that does exist does not support the court's other findings that: (1) the children interact well and have a close relationship with each other; (2) both parents interact well with the children, provide a structured environment for both children and have good relationships with the children; (3) appellee lives in the former marital residence, which provides continuity to the children; (4) both children have adjusted well to the time spent in Mr. Swain's home while having some difficulty adjusting to Ms. Swain's home; (5) Trey does well in school; (6) there is no evidence of any adverse physical or mental health conditions with respect to either of the parents or the children; (7) both parents live in Pike County; and (8) the parents live about 10 minutes apart, which has a positive impact on the practical considerations of shared parenting.
 {¶ 15} A trial court may adopt a party's findings of fact and conclusions of law so long as they are accurate in law and fact. See State v. Combs (1994), 100 Ohio App.3d 90, 652 N.E.2d 205, citing Adkins v. Adkins (1988), 43 Ohio App.3d 95,539 N.E.2d 686. In Adkins, the court stated that a court may adopt a party's "`proposed findings and conclusions verbatim,'" but that "`[b]efore adopting proposed findings and conclusions * * * the trial judge has a duty to read the document thoroughly, and ensure that it is completely accurate in fact and law.'" Id. at 98, quoting Paxton v. McGranahan (Oct. 31, 1985), Cuyahoga App. No. 49645.
 {¶ 16} Here, nothing in the record suggests that Mr. Swain's findings of fact and conclusions of law were so inaccurate that the trial court should not have adopted them. While Ms. Swain complains that the factual findings are not accurate or cannot be found in the record, our review of the record reveals otherwise.
 {¶ 17} First, both Mr. and Ms. Swain testified that they encourage companionship with the other parent. Thus, some evidence suggests that each parent encourages companionship for the children with the other parent.
 {¶ 18} Second, some evidence supports the finding that Trey's wishes favor adopting the shared parenting plan. The trial judge conducted an in camera interview with Trey and found that his wishes favor a shared parenting arrangement. Because this interview is not part of the record and because Ms. Swain bears the burden of providing an adequate appellate record, we presume the correctness of its finding. See App.R. 9(B) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, the appellant shall include in the record a transcript of all evidence relevant to the findings or conclusion."); see, also, Francis v. Francis, Montgomery App. No. 19367, 2003-Ohio-1940 (stating that a party desiring reviewing court to examine the trial court's judgment regarding child's wishes must obtain a transcript of the in camera interview and file it with the reviewing court); Gydosh v.Vice, Cuyahoga App. No. 80176, 2002-Ohio-1388 (presuming regularity of the proceedings when the appellant failed to file a transcript of the in camera interview).
 {¶ 19} Third, the parents' past actions in following the agreed temporary parenting arrangement, and indeed, in agreeing to an arrangement, help demonstrate that they are likely to honor and facilitate court-approved parenting time, that they have successfully cooperated and made joint decisions, that they have the ability to cooperate and make joint decisions, and that they have the ability to encourage the children's contact with the other parent. Thus, some evidence supports the court's findings that both parents have shown that they are likely to honor and facilitate court-approved parenting time rights, the parties have successfully cooperated and made joint decisions, the parents have the ability to cooperate and make decisions jointly with respect to the children, and both parents have demonstrated and testified that they have the ability to encourage the contact of both children with the other parent.
 {¶ 20} Fourth, some evidence supports the court's finding that both parents observed the agreed temporary custody order and neither has continuously or willfully denied the other parent's right to parenting time. Nothing in the record suggests that either parent failed to comply with the agreed temporary arrangement or continuously or willfully denied the other parenting time. All evidence before the court showed that the parties allowed the other appropriate parenting time.
 {¶ 21} Fifth, the evidence supports the court's finding that both parents have jobs in the area and there is no evidence that either parent plans to establish an out-of-state residence. The evidence shows that both parents work in the area: Mr. Swain works at a local bank; Ms. Swain works for the Vinton County School. Neither party presented any evidence concerning plans to move out-of-state.
 {¶ 22} Sixth, the evidence supports the court's finding that Mr. Swain's shared parenting plan is substantially the same as the one set forth in the agreed temporary custody order. Mr. Swain testified that his proposed shared parenting plan is substantially the same plan that the parties followed under the temporary parenting arrangement. The court could review both the temporary arrangement and the proposed permanent arrangement and quite obviously determine for itself whether the two plans were substantially the same.
 {¶ 23} Seventh, Mr. Swain testified that he encourages the children to talk about their mother and he has never said anything negative about Ms. Swain in front of the children. This shows he has the ability to encourage the sharing of love and affection between the children and Ms. Swain. Thus, some evidence supports the court's finding that Mr. Swain encouraged the children to talk about their mother and that he has ability to encourage the sharing of love and affection between both children and Ms. Swain.
 {¶ 24} Eighth, Mr. Swain's testimony provides some evidence to support the court's finding that for the eleven months before the divorce, the parties successfully shared the responsibility for parenting.
 {¶ 25} Ninth, the record supports the court's finding that Colby was almost 16 months old when the first agreed shared parenting order went into place and was 27 months old when the court first adopted the shared parenting plan, and thus he spent almost one-half of his life in both parents' care. Documents in the record show Colby's date of birth. From this, the trial court could calculate the amount of time he has been in a shared parenting arrangement.
 {¶ 26} Ms. Swain's argument that the evidence does not support the court's remaining findings is likewise baseless. Mr. Swain testified that the children share a close relationship and interact well. Mr. and Ms. Swain's testimony show that they care for and love their children and both wish to have a structured environment for the children. The evidence shows that Mr. Swain continues to live in the former marital residence, a residence to which, by its nature, the children were accustomed. Ms. Swain testified that Trey performs well in school. The parents live close to each other, which helps in planning parenting time and times to drop off and pick up the children. Absolutely nothing in the record suggests that the court entered inaccurate findings of fact or conclusions of law by adopting Mr. Swain's verbatim. Rather, Ms. Swain's argument seems to reflect her apparent unhappiness with the result.
 {¶ 27} Accordingly, we overrule Ms. Swain's first assignment of error.
 II {¶ 28} Ms. Swain next contends that the trial court erred by determining that shared parenting would serve the children's best interests.[2]
 {¶ 29} Appellate courts presume that a trial court's decision regarding the allocation of parental rights and responsibilities is correct. See Miller v. Miller (1988), 37 Ohio St.3d 71, 74,523 N.E.2d 846; Butler v. Butler (1995), 107 Ohio App.3d 633,638, 669 N.E.2d 291 (stating that a trial court's judgment "in custody matters enjoys a presumption of correctness"). Therefore, we afford the utmost deference to a trial court's decision regarding the allocation of parental rights and responsibilities. See, e.g., Bates v. Gould, Highland App. No. 03CA12, 2004-Ohio-571; Dannaher v. Newbold, Franklin App. No. 03AP-155, 2004-Ohio-1003, at ¶ 62. When a substantial amount of competent and credible evidence supports a child custody decision, we will not reverse that decision absent an abuse of discretion. Bechtolv. Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus;Swain v. Swain, Pike App. No. 04CA726, 2005-Ohio-65; Bates v.Gould, Highland App. No. 03CA12, 2004-Ohio-571. An abuse of discretion constitutes more than an error of law or judgment, but instead implies that the trial court acted unreasonably, arbitrarily, or unconscionably. See, e.g., Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. In applying the abuse of discretion standard of review, we may not merely substitute our judgment for that of the trial court. See, e.g., Dannaher, supra. While a trial court's discretion in a custody proceeding is broad, it is not absolute, and the trial court must follow the procedure described in R.C. 3109.04 when making custody decisions. Miller, 37 Ohio St.3d at 74.
 {¶ 30} R.C. 3109.04 governs the allocation of parental rights and responsibilities in divorce proceedings and requires the court to consider the children's best interest. See R.C.3109.04(B)(1). R.C. 3109.04(F) sets forth the best interest factors that a court must consider:
(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
(a) The wishes of the child's parents regarding the child's care;
(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
(d) The child's adjustment to the child's home, school, and community;
(e) The mental and physical health of all persons involved in the situation;
(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
(2) In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:
(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.
 {¶ 31} In this case, the trial court considered all of the above factors that were relevant. As we previously discussed, the record contains evidence supporting the trial court's findings regarding these factors. We do not repeat those findings here.
 {¶ 32} Ms. Swain's argument that her testimony showed that the parenting arrangement detrimentally affected the children is baseless. The trial court specifically found her testimony not credible. We will not second-guess its credibility determination. See, e.g., In re Harmon (Sept. 24, 2000), Scioto App. No. 00CA2693, quoting State v. Awan (1986), 22 Ohio St.3d 120, 123,489 N.E.2d 277 ("`The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its judgment for that of the trier of fact.'").
 {¶ 33} Her argument that the court failed to consider the primary caretaker doctrine also is meritless. In Carr v. Carr,
Washington App. No. 00CA26, 2001-Ohio-2466, we discussed this doctrine:
Although not an enumerated statutory factor, a party's role as a primary caretaker is nevertheless a relevant factor to be considered in the best interest analysis. See Holm v. Smilowitz
(1992), 83 Ohio App.3d 757, 776; Thompson v. Thompson (1987),31 Ohio App.3d 254, 259. However, a trial court should not rely on a determination of the primary caretaker as a substitute for a searching factual analysis of the relative parental capabilities of the parties, and the psychological and physical necessities of the children. Thompson, supra. The primary caregiver doctrine is one factor that the court must consider in determining which parent will be the residential parent, but it is not given presumptive weight over other relevant factors. Thompson,
supra; Winters v. Winters (Feb. 24, 1994), Scioto App. No. 2112, unreported.
 {¶ 34} In this case, the court found that Ms. Swain was not the primary caretaker of the younger child, Colby. This finding implies that the court was aware of and considered the doctrine when choosing to order shared parenting.
 {¶ 35} Consequently, the trial court did not abuse its discretion by adopting Mr. Swain's shared parenting plan. We overrule Ms. Swain's two assignments of error and affirm the court's judgment.
Judgment Affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Kline, J.: Concur in Judgment and Opinion.
[2] Although appellant did not separately argue her assignments of error as App.R. 16 requires, we address her arguments separately.