[Cite as *O'Neill v. Jones*, 2025-Ohio-5366.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| HEIDI O'NEILL, | **CASE NO. 2025-G-0019** |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| JEREMY J. JONES, | |
| Defendant-Appellant. | Trial Court No. 2022 M 000399 |

## OPINION AND JUDGMENT ENTRY

Decided: December 1, 2025
Judgment: Affirmed

*Dennis J. Ibold* and *David A. Urbancic*, Ibold & O'Brien, 401 South Street, Chardon, OH 44024 (For Plaintiff-Appellee).

*Celina T. Colombo*, Colombo Law, 4050 Erie Street, Suite 202, Willoughby, OH 44094 (For Defendant-Appellant).

*John W. Shryock*, John W. Shryock Co., L.P.A., 30601 Euclid Avenue, Wickliffe, OH 44092 (Guardian ad litem).


EUGENE A. LUCCI, J.

{¶1} Appellant, Jeremy J. Jones ("father"), appeals the judgment overruling his objections to a magistrate's decision and granting appellee, the maternal grandmother, Heidi O'Neill ("grandmother"), companionship with Jones' minor child ("the child"). We affirm.

{¶2} Father and the child's mother ("mother") were married in 2015, and the child was born in December 2015. In 2019, father and mother began divorce proceedings.

During these proceedings, mother moved into the home of grandmother and her husband, where she lived with the child during her parenting time.

{¶3} Mother passed away on July 2, 2022. Thereafter, the divorce proceedings were dismissed.

{¶4} Subsequently, grandmother commenced the present action by filing a complaint in 2022 for grandparent companionship pursuant to R.C. 3109.11.[1] In response, father filed a motion to dismiss the complaint, which the trial court denied. In a magistrate's order dated September 16, 2022, the magistrate appointed a guardian ad litem and stated that the magistrate would conduct an in camera interview of the child to discern his wishes and concerns at a later date.

{¶5} Father filed a petition for writ of prohibition in this court against the assigned trial court judge, the Honorable Carolyn J. Paschke, seeking to prevent the judge from proceeding upon the complaint and appointing a guardian ad litem. *See State ex rel. Jones v. Paschke*, 2023-Ohio-1536, ¶ 1 (11th Dist.). This court granted summary judgment to Judge Paschke and denied the petition. *Id.* at ¶ 31.

{¶6} Father appealed our ruling on his petition to the Ohio Supreme Court, which affirmed our decision, holding that the general division of the court of common pleas had jurisdiction over grandmother's complaint, and father had an adequate remedy to challenge the appointment of a guardian ad litem through an appeal from a final entry in the present case. *State ex rel. Jones v. Paschke*, 2024-Ohio-135, ¶ 18-19.

---

1. R.C. 3109.11 permits certain nonparents to file a motion for companionship or visitation under certain circumstances. The terms "companionship" and "visitation" are treated similarly. *State ex rel. Jones v. Paschke*, 2024-Ohio-135, ¶ 14. This court will utilize the term "companionship" for ease of discussion.

Case No. 2025-G-0019

{¶7} Thereafter, the present matter proceeded to trial before the magistrate in June and July 2024. Following the trial, the magistrate scheduled the in camera interview of the child for August 20, 2024.

{¶8} On November 27, 2024, the magistrate issued a decision including findings of fact and conclusions of law. Therein, the magistrate concluded that companionship with grandmother was in the child's best interests and set forth an in-person companionship schedule and related guidelines.

{¶9} Father objected to the magistrate's decision. To support his objections, father requested copies of the transcripts from the days of trial before the magistrate. However, the record does not indicate that father requested a sealed transcript of the in camera interview be prepared. The transcripts of the magistrate's hearing were filed on January 23, 2025. Father thereafter submitted supplemental objections, and grandmother responded.

{¶10} In a judgment entry dated April 10, 2025, the trial court adopted the magistrate's decision and entered judgment providing maternal grandmother companionship with the child as recommended by the magistrate.

{¶11} Father noticed an appeal and now assigns five errors for this court's review.

{¶12} In his first assigned error, father argues:

> The trial court erred in failing to conduct an independent de novo review of the magistrate's decision, as required by Civ.R. 53(D)(4)(d), following appellant's properly filed objections, as to material factual and legal issues, and it was an abuse of discretion to, instead, summarily adopt the magistrate's decision, in its entirety, as it was unsupported by the record and contrary to law.

Case No. 2025-G-0019

{¶13} In his first assigned error, father maintains that the trial court did not independently review the objected matters. In support, father argues that the court did not specifically reference in its judgment entry the matters raised in his objections.

{¶14} Civ.R. 53(D)(4)(d) provides, in relevant part, "If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."

{¶15} This court generally reviews a trial court's action on a magistrate's decision for an abuse of discretion. *Carson v. Holmes*, 2010-Ohio-4199, ¶ 23 (11th Dist.). However, a trial court's failure to conduct an independent review as required by Civ.R. 53(D)(4)(d) renders the trial court's judgment defective as a matter of law. *Hetmanski v. Hetmanski*, 2024-Ohio-1646, ¶ 75 (11th Dist.).

{¶16} Here, in father's objections, he maintained that the magistrate erred in making certain findings and that the magistrate's findings did not support the magistrate's determination that companionship with grandmother was in the child's best interest.

{¶17} In the trial court's April 10, 2025 judgment entry, it specifically stated the matter was before the court on father's preliminary and supplemental objections. The judgment entry then provides:

> After an independent analysis of [father's] objections to ascertain that the Magistrate properly determined the factual issues and appropriately applied the law, the Court finds that there is no error of fact or law, or other defect on the face of the Magistrate's Decision filed November 27, 2024, and hereby APPROVES AND ADOPTS that Decision in its entirety.

{¶18} We recognize that the trial court's reference to whether there exists "an error of fact or law, or other defect on the face" of the magistrate's decision is not the standard applicable to the trial court's adoption of a magistrate's decision where objections to the magistrate's decision have been timely filed. *See* Civ.R. 53(D)(4)(c) ("If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision.").

{¶19} However, as set forth above, the trial court also indicated that it had "independently" analyzed father's "objections to ascertain that the Magistrate properly determined the factual issues and appropriately applied the law," which is the proper standard. Further, the trial court continued to discuss the history of this case and determined that the magistrate had properly considered all the relevant facts and evidence in its analysis of the child's best interests.

{¶20} Although the trial court did not specifically cite father's objections in this portion of the judgment entry, the court's determinations directly address issues raised in the objections. *See Cottage v. Cottage*, 1997 WL 360977, *11 (11th Dist. June 13, 1997) ("Although a detailed finding regarding each objection raised would be ideal, Ohio appellate courts have not required that the trial court's judgment entry specifically address each objection raised." (Citations omitted.)).

{¶21} The discussion contained in the trial court's judgment indicates that it conducted the appropriate review, looking past the face of the decision itself, to independently "ascertain that the magistrate . . . properly determined the factual issues and appropriately applied the law." *See* Civ.R. 53(D)(4)(d).

{¶22} Accordingly, father's first assigned error lacks merit.

Case No. 2025-G-0019

{¶23} We address father's remaining assigned errors together to facilitate our discussion. In his second through fifth assigned errors, father maintains:

> [2.] The trial court erred and abused its discretion by failing to properly analyze and apply the best interest factors under Ohio Revised Code 3109.051(D), and adopting the magistrate's order, despite overwhelming evidence that said order was contrary to the best interests of the child, and unsupported by competent evidence, including the guardian ad litem's testimony and the child's clearly expressed wishes.
>
> [3.] The trial court erred by failing to give constitutionally required "special weight" to the fit parent's objections to grandparent visitation, in violation of *Troxel v. Granville*, 530 U.S. 57 (2000), and *Harrold v. Collier*, 107 Ohio St.3d 44 (2005).
>
> [4.] The trial court erred in failing to consider the child's clearly expressed wishes, and by concluding that the child lacked sufficient maturity to express a preference by disproportionally relying on the magistrate's speculative conclusions following a confidential, in-camera interview of the child, despite contrary, competent evidence from the guardian ad litem, the fit parent, and maternal grandmother.
>
> [5.] The trial court's judgment is against the manifest weight of the evidence, as it disregards the unrefuted testimony of the child's father and the guardian ad litem, misstates key facts, and imposes orders that are unsupported by the record and not in the best interest of the child.

{¶24} As set forth in our discussion of the first assigned error, we generally review a trial court's action on a magistrate's decision for an abuse of discretion. *Carson*, 2010-Ohio-4199, at ¶ 23 (11th Dist.). Additionally, we generally review a trial court's decision regarding companionship for an abuse of discretion. *In re Newsome*, 2008-Ohio-2132, ¶ 22 (11th Dist.). "'The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record.'" *State v.*

*Marcellino*, 2019-Ohio-4837, ¶ 23 (11th Dist.), quoting *State v. Flanagan*, 2015-Ohio-5528, ¶ 42 (11th Dist.), citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925).

{¶25} "However, in cases involving the weighing of facts, this court has applied a manifest weight of the evidence standard." *Koller v. Zellman*, 2018-Ohio-2463, ¶ 31 (11th Dist.), citing *CitiMortgage, Inc. v. Elrod*, 2017-Ohio-8442, ¶ 15 (11th Dist.). "'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other."'" *Koller* at ¶ 31, quoting *State v. Thompkins*, 1997-Ohio-52, ¶ 24, quoting *Black's Law Dictionary* (6 Ed. 1990). "A challenge to the manifest weight of the evidence requires an appellate court to review the evidence presented 'including the reasonable inferences and the credibility of the witnesses, to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the decision must be reversed.'" *Straight v. Straight*, 2020-Ohio-4692, ¶ 24 (11th Dist.), quoting *Chandler v. Chandler*, 2017-Ohio-710, ¶ 13 (11th Dist.), citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. "The weight to be given evidence and witness credibility are primarily for the trier of fact." (Citation omitted.) *Straight* at ¶ 25. "The trier of fact is free to believe all, part, or none of a witness'[ ] testimony." (Citation omitted.) *Id.*

{¶26} Here, grandmother sought companionship with the child pursuant to R.C. 3109.11, which provides:

> If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of

Case No. 2025-G-0019

the companionship or visitation rights is in the best interest of the minor child. In determining whether to grant any person reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code. Divisions (C), (K), and (L) of section 3109.051 of the Revised Code apply to the determination of reasonable companionship or visitation rights under this section and to any order granting any such rights that is issued under this section.

{¶27} R.C. 3109.051(D) lists numerous factors that a trial court must consider in determining whether to grant companionship rights to a grandparent under R.C. 3109.11. These factors include "the wishes and concerns of the child's parents, as expressed by them to the court. . . ." R.C. 3109.051(D)(15).

{¶28} "[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). Accordingly, "Ohio courts are obligated to afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation made pursuant to R.C. 3109.11 or 3109.12." *Harrold v. Collier*, 2005-Ohio-5334, ¶ 12. The burden of proving that companionship with the nonparent is in the best interest of the child is placed on the nonparent, "thereby honoring the traditional presumption that a fit parent acts in the best interest of his or her child." *Id.* at ¶ 45. However, courts are not required "to find 'overwhelmingly clear circumstances' to support forcing visitation for the benefit of the child over the opposition of the parent." *Id.* at ¶ 46. Instead, the court must find that companionship with the nonparent is in the best interest of the child after considering all factors set forth in R.C. 3109.051(D) and giving special weight to the wishes of the child's parent. *In re N.S.*, 2022-Ohio-3988, ¶ 26 (1st Dist.).

{¶29} Here, the magistrate set forth his findings as to the relevant R.C. 3109.051(D) best-interest factors as follow.

{¶30} First, R.C. 3109.051(D)(1) requires the trial court to review "[t]he prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child. . . ." As to this factor, the magistrate found that the child lives with father, and they enjoy a close, loving relationship. Two of father's older children from a prior relationship also reside at the home. No evidence was provided as to the relationship between the child and his siblings or other paternal family members.

{¶31} Further, the magistrate found that the child and mother resided with grandmother and her husband from September 2019, until mother's death in July 2022. The magistrate determined that the child and grandmother had a close, loving relationship from the time of the child's birth until mother's death. The child also enjoyed a close relationship to grandmother's husband, who acted as a surrogate grandfather for the child.

{¶32} Several relatives of grandmother and her husband testified in support of grandmother's request and confirmed the positive relationship between grandmother and the child while the child was residing with grandmother. These family members acknowledged that they have not contacted father directly since mother's death to attempt to visit with the child, but they did desire to visit the child in the future.

{¶33} The magistrate further found that the child continued a relationship with his maternal aunt following mother's death. The maternal aunt resided in Hawaii. Father

Case No. 2025-G-0019

permitted the maternal aunt to have unsupervised and unrestricted access to the child. However, father conditioned this relationship on the aunt not permitting contact with grandmother. The maternal aunt has shared information and updates about the child with the maternal family.

{¶34} Next, with respect to R.C. 3109.051(D)(2), this division requires the trial court to consider "the geographical location of [the grandparent's] residence and the distance between [the grandparent's] residence and the child's residence. . . ." Here, the magistrate found that the father and child reside in Kent, Ohio, and grandmother resides in Russell, Ohio, which are approximately 45 miles apart. The magistrate concluded that this distance did "not pose a significant geographic challenge."

{¶35} In regard to R.C. 3109.051(D)(3), this division requires the trial court to consider "[t]he child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule. . . ." The magistrate determined that the schedules of the child and the parties did not pose an impediment to companionship.

{¶36} Next, R.C. 3109.051(D)(4) requires the trial court to consider "[t]he age of the child. . . ." Here, the child was born in December 2015, and he was therefore eight years old at the time of the hearing.

{¶37} Concerning R.C. 3109.051(D)(5), this division requires the trial court to consider the "child's adjustment to home, school, and community. . . ." Here, the magistrate found that, since the death of mother, the child has lived with his father and two of father's older sons. The child is doing well in school, plays recreational basketball, and has several friends.

{¶38} Pursuant to R.C. 3109.051(D)(6), "If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to . . . companionship or visitation by the grandparent . . . who requested companionship or visitation, as to a . . . visitation schedule, or as to other . . . visitation matters, the wishes and concerns of the child, as expressed to the court. . . ." Here, pursuant to the testimony of father and of the guardian ad litem, the child did not want to visit grandmother because she informed him that father and his attorneys killed his mother. As set forth above, the magistrate conducted an in camera interview with the child after trial. The magistrate found:

> [The child] lacks sufficient maturity to articulate his wishes and concerns relating to companionship or visitation time with [grandmother]. His use of language and mannerisms displayed referring to possible companionship or visitation with [grandmother] indicated that [the child] had been inappropriately coached by [f]ather prior to the in-camera conference to respond negatively to the question of whether he preferred to see and spend future time with [grandmother]. [The child's] comments also evidenced that he had been inappropriately informed of details pertaining to this case as well as the litigation between [grandmother] and [f]ather in the Probate Court. As result of these special circumstances, it is not in [the child's] best interests to consider his wishes and concerns.

{¶39} With respect to R.C. 3109.051(D)(7), this division requires the trial court to consider "[t]he health and safety of the child. . . ." The magistrate found the child was in good health, he regularly sees his pediatrician and dentist, and his physical safety was not at risk when in the care of either party.

{¶40} In regard to R.C. 3109.051(D)(8), this division requires the trial court to consider "[t]he amount of time that will be available for the child to spend with siblings. . .

Case No. 2025-G-0019

." The magistrate found that granting companionship with grandmother would not unduly deprive the child from time with his siblings.

{¶41} Concerning R.C. 3109.051(D)(9), this division requires the trial court to consider "[t]he mental and physical health of all parties. . . ." As to this factor, the magistrate found that father was in good mental and physical health, and grandmother was in good mental health but had been diagnosed with Parkinson's disease, and her prognosis was unknown.

{¶42} With respect to R.C. 3109.051(D)(10), which requires the trial court to consider "[e]ach parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation. . . ." On this factor, the magistrate noted that father did not permit any informal companionship between the child and grandmother following the summer of 2022.[2] Accordingly, the magistrate could not assess either party's willingness to reschedule missed companionship.

{¶43} With respect to the best interest factors contained in R.C. 3109.051(D)(11), (D)(12), and (D)(13), the magistrate determined that these divisions did not apply to the facts of this case.

{¶44} In regard to R.C. 3109.051(D)(14), this division requires the court to consider "[w]hether either parent has established a residence or is planning to establish

_____

2. The magistrate found that father did not permit companionship with grandmother after mother's death in July 2022. Father has disputed this, indicating that the testimony established that he brought the child to mother's funeral in July 2022, and he permitted the child to attend maternal aunt's wedding in August 2022. However, it appears the magistrate was referring to specific companionship between the child and the grandmother in his findings, and not events at which the grandmother and the child were both present.

Case No. 2025-G-0019

a residence outside this state. . . ." The magistrate found that father had moved from Auburn to Kent in October 2022, but there was no indication that father planned to relocate outside of Ohio.

{¶45} Concerning R.C. 3109.051(D)(15), which the magistrate noted must be given special consideration pursuant to *Harrold*, 2005-Ohio-5334, ¶ 12, this division requires the court to consider "the wishes and concerns of the child's parents, as expressed by them to the court. . . ." As to this factor, the magistrate found:

> Father strenuously opposes [grandmother's] request for companionship or visitation with [the child]. The reasons for his position include:
>
> A. Father maintains that [grandmother] told [the child] that [f]ather and/or his attorneys were responsible for [m]other's death. These alleged statements were made at or shortly after the time of [m]other's funeral in July, 2022.
>
> B. Father maintains that [grandmother] previously conspired with [m]other to deprive [f]ather of temporary parenting time during the period, September, 2019 through July, 2022, while [f]ather and [m]other were litigating their divorce especially during the time of Covid-19.
>
> C. Father maintains that [grandmother] is prosecuting this case to attack him and make him look bad, and is also seeking an order from the Probate Court to recover a portion of the sales proceeds resulting from the sale of [f]ather's and [m]other's residence after [m]other's death.

{¶46} Next, with regard to R.C. 3109.051(D)(16), requiring the trial court to consider "any other factor in the best interest of the child," the magistrate first noted that grandmother sought companionship with the child "every Wednesday evening and alternate weekends plus time on holidays, days of special meaning and during [the child's] school vacation periods consistent with the Geauga County Standard Parenting Time schedule afforded parents in a divorce case." The magistrate concluded that such an

extensive schedule "would inappropriately put [grandmother] on par with a nonresidential parent."

{¶47} The magistrate next determined that grandmother, through her husband, attempted to discuss with father the issue of companionship with the child after mother's death. However, father declined to agree to temporary companionship.

{¶48} Further, the magistrate concluded that grandmother's other relatives, aside from maternal aunt, did not attempt to reach out to father directly for companionship with the child "due to the tension existing between [grandmother] and [f]ather."

{¶49} Next, the magistrate found that grandmother "inappropriately attempted to contact [the child] in the Fall, 2023 by volunteering at his school without notice to [f]ather." Grandmother had also left Christmas gifts and a photo book for the child at father's residence in 2023. Father indicated that he gave the child the gifts.

{¶50} Finally, with respect to the guardian's report and recommendation, the magistrate found that the guardian had initially indicated in a notice filed May 4, 2024, that the child "was not able to express his wishes regarding the issues raised in this matter." However, the magistrate noted that, shortly thereafter, the guardian changed his position on this matter:

> [P]er [the guardian's] Report and Recommendation, distributed later that in (sic) May, 2024, [the child] apparently expressed a desire to the [guardian] to NOT spend time with [grandmother] at the present time which the [guardian] noted in his Report and Recommendation. [The child] apparently expressed this preference in person privately to the [guardian] on several occasions, but each time while [the child] was in the care of [f]ather. Because [grandmother] was not permitted any temporary companionship or visitation time with [the child] during the pendency of this case and the period of the [guardian's] appointment, the [guardian] was not able to observe [the child] together with [grandmother] nor attempt to

elicit [the child's] preferences while he was in the care of [grandmother].

{¶51} With respect to the guardian's other findings, the magistrate noted that the guardian was offended by a statement made by grandmother's husband, "who testified that he felt that he and [grandmother] care more about [the child] than [f]ather." The guardian also opined that grandmother lacked necessary boundaries. However, the guardian indicated that the child needs to know that grandmother cares about him, but a significant amount of animosity existed between grandmother and father.

{¶52} The magistrate further considered that the guardian referenced the grandmother/grandson relationship as "fractured," and concluded that it was not in the child's best interests to grant grandmother companionship at that time. However, the guardian "qualified that recommendation stating that [the child] should [be] entitled to initiate communication with [grandmother] if he chose to do so and [f]ather should be supportive of such communication."

{¶53} After consideration of all the best interest factors, the magistrate concluded that grandmother's companionship with the child was in his best interest. The magistrate set forth a specific companionship schedule and related communication guidelines. As addressed above, the trial court adopted the magistrate's decision in full.

{¶54} In his second through fifth assigned errors, father maintains that the court's decision to allow grandmother companionship is inconsistent with the recommendation and the report of the guardian ad litem; fails to consider the child's express wishes; gives too much weight to the magistrate's determination that the child had been coached to express a desire to not visit with grandmother; fails to give special weight to father's wishes; and is against the manifest weight of the evidence.

Case No. 2025-G-0019

{¶55} However, the magistrate explained that the guardian did not interview the child while in the care of grandmother when ascertaining his wishes. The magistrate also determined that the child had been coached by father based upon the magistrate's in-camera interview with the child.

{¶56} When conducting an in-camera interview of a child in custody and companionship matters, the trial court must record the interview so that it may be kept under seal for purposes of appeal. *Jackson v. Herron*, 2005-Ohio-4046, ¶ 16 (11th Dist.); *Willis v. Willis*, 2002-Ohio-3716, ¶ 20 (12th Dist.). Where the sealed transcript of the interview is not transmitted with the record on appeal, we presume the correctness of the trial court's findings made from such an interview. *Swain v. Swain*, 2005-Ohio-4321, ¶ 18 (4th Dist.). Further, when objecting to portions of a magistrate's decision that relied on the interview, the objecting party bears the burden of arranging for the transmittal of a sealed transcript of the confidential interview to the trial court. *Hammond v. Hammond*, 2019-Ohio-1219, ¶ 13 (1st Dist.). This court cannot review on appeal those portions of the record that were not before the trial court in its ruling on objections. *See id.*

{¶57} Here, as set forth in our recitation of the facts and procedural history, the record does not indicate that father arranged for the preparation and filing of a sealed transcript of the in camera interview for the trial court's review of his objections. Further, no sealed transcript of the interview was submitted with the record on appeal, and father does not suggest that the interview was not recorded. *Compare Guliano v. Guliano*, 2011-Ohio-6853, ¶ 37 (11th Dist.) (a trial court errs when it fails to record an in camera interview of the minor child). To the contrary, the notice of the interview and the magistrate's decision both recognize the requirement that the interview be recorded.

Case No. 2025-G-0019

{¶58} As father bore the burden of providing a sealed transcript of the interview for the trial court's review on objections and for this court's review on appeal, without the transcript, we must presume that the magistrate's finding that father coached the child to express his desire to not visit grandmother is accurate.

{¶59} Next, we note that father has challenged aspects of the magistrate's decision which he concludes disregards pertinent facts pertaining to the child's best interest. He maintains that the trial court failed to give special weight to his wishes and its decision is against the weight of the evidence.

{¶60} Based on the record before us, although father did not wish for grandmother to enjoy companionship with the child, we cannot say that the court erred in not giving weight to the child's express wishes. The magistrate's decision recognizes that father's wishes are to be given significant weight. However, the magistrate found many factors weighing in support of companionship with grandmother, including that the child resided with grandmother and her husband while in mother's care during the divorce proceeding until mother's death. The child and grandmother enjoyed a close, loving bond prior to mother's death. The distance between the parties' homes, the schedules of the parties and the child, and the time available for the child to spend with father and paternal relatives are not unduly affected by companionship with grandmother.

{¶61} Accordingly, we cannot say that the trial court failed to give special weight to father's wishes or abused its discretion in finding the child's best interest was served in allowing grandmother companionship with the child. Nor can we say that the trial court's judgment is against the manifest weight of the evidence.

{¶62} Last, we note that, in addition to periods of physical companionship with the child, the judgment also adopted the magistrate's decision regarding extracurricular activities and discussions involving mother's death as follow:

> [Grandmother], other maternal relatives and friends may attend activities, e.g., games, school events, recitals, etc. that occur outside of [grandmother's] companionship or visitation time. Father shall timely provide [grandmother] via [Our Family Wizard] with a schedule of these games or events and/or add her to any e-mail train from the coach, teacher, or instructor so as to keep [grandmother] informed of the scheduling of these events.
>
> . . .
>
> Neither [grandmother] nor [f]ather shall further discuss the reasons or circumstances surrounding [mother's] . . . death with [the child] until such time [as the child] attains an appropriate age when [f]ather may refer to [m]other's death certificate to explain the cause of death to him.

{¶63} Father did not specifically object to these provisions in the magistrate's decision. Civ.R. 53(D)(3)(b)(ii) provides, "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Pursuant to Civ.R. 53(D)(3)(b), "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Because father did not object to the aspects of the magistrate's decision pertaining to extracurricular activities and discussions of mother's death, he has forfeited his argument as to these provisions on appeal to the extent that he has challenged them.

{¶64} Based on the foregoing, father's second through fifth assigned errors lack merit.

{¶65} The judgment is affirmed.


ROBERT J. PATTON, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2025-G-0019

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error lack merit. It is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

_____
JUDGE EUGENE A. LUCCI

_____
PRESIDING JUDGE ROBERT J. PATTON,
concurs

_____
JUDGE JOHN J. EKLUND,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2025-G-0019